IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY J. HAYES,<br>*Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. H-09-3443 |
| MICHAEL ASTRUE,<br>*Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this appeal from a partial denial of Social Security disability benefits are Plaintiff's Motion for Summary Judgment (Docket Entry No. 6) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 9). The Court, having considered the motions, all relevant filings, the record, and the applicable law, **GRANTS** Defendant's motion, **DENIES** Plaintiff's motion, and **AFFIRMS** the decision of the Commissioner as set forth in the Appeals Council's decision.

## I.  CASE BACKGROUND

### A.    Procedural Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of a partially unfavorable decision by the Commissioner of the Social Security Administration (the "Commissioner") regarding her claims for disability benefits and supplemental security income under Title II of the Social Security Act ("the Act").

Plaintiff filed her applications for disability insurance benefits and supplemental security income on May 18, 2006, alleging an onset date of July 11, 2005, due to major depression, diabetes, knee and leg issues, and problems with her heart and nerves.  Tr. 177–182.  At an initial hearing held on December 19, 2007, the administrative law judge (the "ALJ") determined that a psychological evaluation was necessary, and continued the hearing for June 2, 2008.  Tr. 33–66.  On June 2, 2008, the ALJ heard additional testimony at the supplemental hearing, and referred plaintiff for a second psychological evaluation.  Tr. 67–94; 416.  Counsel received a copy of the second psychologist's written report from the ALJ on August 20, 2008.  Tr. 274–75.  In his letter sending the report to counsel, the ALJ advised counsel that he could request a supplemental hearing to obtain testimony from the psychologist, and stated that, "If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision."  Tr. 274.  Counsel responded on September 4, 2008, submitting a letter to the ALJ with comments that the psychologist's report fully supported a favorable decision.  Counsel further stated to the ALJ, "If you feel that the new evidence does not support a finding of disability, the claimant requests a supplemental hearing for an opportunity to cross-examine Dr. Lonnecker."  Tr. 272–73.  On December 2, 2008, the ALJ issued his decision finding plaintiff not disabled, without holding a second supplemental hearing.  Tr. 23–35.

The Appeals Council granted plaintiff's request for review, and issued a partially favorable decision finding plaintiff disabled as of September 11, 2008, her fiftieth birthday,

but not disabled from July 11, 2005, through September 10, 2008, prior to her fiftieth birthday. Tr. 1–11. This decision was the final act of the Commissioner. Plaintiff filed the pending lawsuit pursuant to 42 U.S.C. § 405(g).

## B.    Factual Background and Medical Evidence

Plaintiff was born on September 12, 1958. She attained a GED and was forty-six years old at the alleged date of onset. Tr. 42–43. Her most recent past relevant work was as a senior service representative, a position she held for five years. As a senior service representative, she answered the telephone, trained other employees, and assisted with irate customers. Tr. 44–45. Before that, she was employed as a housing authority counselor for nine years, which required her to interview clients in the office and at their homes. Tr. 46.

The medical records and other evidence show that, on June 10, 2006, plaintiff was examined and treated through the Harris County Hospital District for chronic lower extremity edema (swelling) and bilateral knee pain. Tr. 289. She was prescribed pain medication and an anti-hypertensive to reduce her blood pressure. Tr. 290. She was subsequently seen in the emergency room on August 2, 2006, for complaints of chest pain, left arm pain, and palpitations. Tr. 509. She was diagnosed with atypical chest pain and treated with aspirin. Tr. 510.

Plaintiff's medical records were reviewed by a state disability determination services non-examining physician, Frederick Cremona, M.D., who completed a physical residual functional capacity ("RFC") assessment of plaintiff on November 6, 2006. Tr. 304–11. He

3

found that plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, with corresponding push/pull limitations, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. Tr. 305. He found that plaintiff could not climb ladders, ropes, and scaffolds, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Tr. 306. The physician was of the opinion that plaintiff's postural limitations were secondary to extreme obesity/knee pain. Tr. 306. He was of the further opinion that plaintiff had no manipulative, visual, communicative, or environmental limitations. Tr. 307–08. He concluded that plaintiff's alleged limitations were not fully supported by the evidence of record. Tr. 309.

Plaintiff was examined by her family medicine physician, Mihir Parikh, M.D., on February 6, 2007, for complaints of pain in her knee joints, right hip, and shoulder joints. It was noted that she had been out of her medications for two months. Tr. 331. Plaintiff told her physician that she had a "nervous breakdown" in 2005 due to chronic pain and leaving her work. Tr. 331. Physical examination at that time showed that plaintiff was 66 inches tall, weighed 304 pounds, and exhibited edema on her lower extremities. Tr. 331–32. She was diagnosed at that time with joint pain, hypertension, diabetes mellitus, cardiac failure, dysmetabolic syndrome, chronic pain, and dysthymic disorder. Tr. 331–32. Plaintiff was prescribed medications for diabetes, edema, depression, inflammation, and pain. Tr. 332.

4

Her blood tests revealed an elevated glucose level and high hemoglobin level, but were otherwise normal.

On March 21, 2007, plaintiff was again seen for follow up, and reported on-going arm and leg pain, anxiety, depression, and visual and auditory hallucinations. Tr. 324. A psychiatric consultation was recommended. Tr. 325. Plaintiff returned to her family medicine physician on August 16, 2007, complaining of bilateral knee and right hip pain, blurry vision, and foot numbness. Tr. 319. She was reported as compliant with her medications and diet, and weighed 308 pounds at that visit. Tr. 321. The physician confirmed plaintiff's diagnoses of diabetes, arthritis, depression, and hypertension, and continued her medications for diabetes, depression, inflammation, swelling, and pain. Tr. 321–22. X-rays of her knees evinced moderate osteoarthritis. Tr. 316. Her mental status was found intact, with no depression or suicidal ideation. Tr. 321.

At a follow-up visit on December 5, 2007, plaintiff complained of burning and tingling on her feet, visual disturbances, knee pain, sleep disturbances, and depression. Tr. 371. She weighed 308 pounds. Tr. 374. Her diagnoses included hypertension, controlled diabetes, depressive disorder, and osteoarthritis. Her mental status remained intact, and her prior medications were continued. Tr. 374, 377.

On January 28, 2008, consultative examiner George L. Lazar, Ph.D., performed a psychological evaluation of plaintiff. Tr. 385. He noted that plaintiff held a cane in her right hand and used it every few steps. He reported her mood as calm, but found that her

demeanor suggested exaggerated functional deficits and evasiveness as to descriptive self-reporting.  Plaintiff evinced clear speech and an average energy level, and completed requested tasks with some reduced tenacity. Lazar noted that there was scant descriptive and qualitative data regarding plaintiff's disabling complaint. She told Lazar that she stopped working in 2005 following a "nervous breakdown," and reported hearing a voice and seeing her deceased aunt. Tr. 386.  She denied any current or past suicidal or homicidal ideation or intent. Tr. 387.  She was attentive and without perceptual abnormalities, and had limited insight and fair judgment. Tr. 390.  Her demeanor suggested "psychological naivete" with a limited awareness of her own role in her reported concerns.  *Id.*

Results of plaintiff's Weschler Adult Intelligence Scale ("Weschler") test revealed a full scale IQ of 67, a verbal comprehension IQ of 72, and a performance IQ of 68.  *Id.*  Lazar diagnosed plaintiff with borderline intellectual functioning and assigned her a global assessment of functioning (GAF) score of 55.[1]  Tr. 391.  He stated that plaintiff's psychotic features had been addressed through psychotropic medications and religious counseling, and that her prognosis could improve with diligent initiative, continued monitoring of the psychotropic regimen, and vocational assessment to determine options within her functional capacities. Tr. 392. Lazar administered a Wide Range Achievement Test – 4 (WRAT 4) to plaintiff, the results of which measured plaintiff's functional reading skills at the 8.9 grade

---

[1] A GAF score of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV-TR") 34 (4th ed. 2000).

level, spelling abilities at the 3.5 grade level, and mathematics skills at the 3.7 grade level. Tr. 391.

Lazar also completed a functional assessment of plaintiff on February 8, 2008. He found that plaintiff had moderate restrictions on her ability to understand and remember complex work-related decisions; mild restrictions on her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. Tr. 395. Lazar also found that plaintiff had mild restrictions on her ability to interact appropriately with the public, supervisors, and co-workers, and mild restrictions on her ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 396.

On July 24, 2008, Cecilia Lonnecker, Ph.D., a consultative examiner, performed a psychological evaluation of plaintiff. She found plaintiff's speech understandable, facial expressions alert, and eye contact adequate. Tr. 409. Plaintiff's thought process was found coherent, and her thought content not delusional. *Id.* Plaintiff's affect was stable, and her mood was depressed and tearful. *Id.* Lonnecker found plaintiff fully oriented with a fair ability for abstractions. Tr. 409–10. Lonnecker's administration of the Welscher test on plaintiff found a full scale IQ of 74, a verbal comprehension IQ of 77, and a performance IQ of 74, placing plaintiff within the borderline range for IQ. Tr. 410. Lonnecker diagnosed plaintiff with dysthymic disorder by history, anxiety disorder not otherwise specified, borderline intellectual functioning, and diabetes and hypertension by history. Tr. 412.

Lonnecker assigned plaintiff a GAF score of 55, and concluded that plaintiff's prognosis with treatment was fair. *Id.* Lonnecker administered the Wide Range Achievement Test –3 (WRAT 3) on plaintiff, which revealed plaintiff's functional reading skills were at the eighth grade level, her spelling abilities at the third grade level, and her mathematics skills at the fifth grade level. Tr. 411.

Lonnecker's functional assessment of plaintiff found that plaintiff had moderate restrictions on her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Tr. 414. Plaintiff had mild restrictions on her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. *Id.* Lonnecker also found that plaintiff had marked restrictions on her ability to respond appropriately to usual work situations and to changes in a routine work setting, moderate restrictions on her ability to interact appropriately with the public and co-workers, and mild restrictions on her ability to interact appropriately with supervisors. Tr. 415.

Plaintiff was seen by another family medicine physician on July 31, 2008, with complaints of joint pain and occasional hallucinations. Her physician noted that she had bipedal edema and was using a walking cane. Tr. 450. Her weight was measured at 303 pounds. *Id.* She was diagnosed with uncontrolled hypertension and diabetes, and medical staff recommended she follow a low salt diet. *Id.* At a medications follow-up on October 31, 2008, plaintiff complained of stomach discomfort with a duration of "years." Lower

extremity edema was again noted.  The physician diagnosed diabetes, hypertension, and GERD (gastroesophageal reflux disease), and continued plaintiff's medications.  Tr. 443.

Plaintiff was again seen on November 14, 2008, for complaints of chest pain and arthritis in her knees and hip.  Tr. 436.  A diagnosis of non-cardiac chest pain was made, with recommendations for a stress test, echocardiogram, and carotid Doppler test.  Tr. 438.  She returned five days later with continued complaints of chest pain, palpitations, dyspnea, shortness of breath, blurred vision, and numbness and tingling in her lower extremities.  Tr. 430.  No changes were made to her medications.  Tr. 433.  An upper gastrointestinal x-ray on December 22, 2008, was suggestive of gastritis, reflux, a small hiatal hernia, and slowed gastric and intestinal emptying.  Tr. 446.

On January 21, 2009, plaintiff was seen in the emergency room for right arm pain. Tr. 505.  Redness was noted, and she was prescribed pain medication.  Physical examination revealed 4/5 weakness in the right arm with full range of motion.  Tr. 508.

### C.    ALJ Hearing of December 19, 2007

At the hearing held before the ALJ on December 19, 2007, plaintiff testified that she was 49 years of age, stood five and one-half feet tall, and weighed 306 pounds.  Tr. 42.  She resided with her grandson, and her daughters stayed with her during the day.  Plaintiff has a GED, and completed a business training course in 1990 or 1991.  Tr. 44.  Her last employment was with I-Code Office Solutions as a senior representative, which required her to make phone calls, train employees, and assist with irate customers.  *Id.*  She supervised

about twenty other employees, and worked for the company for five years. Tr. 45. She stopped working in July 2005 for unspecified reasons. Tr. 46. She was unable to return to work due to health problems and an inability to "get [her] mind back to where it was." *Id*. Before working for I-Code Office Solutions, she was a counselor with the housing authority for nine years. She also worked for Greyhound in the complaints department for customers reporting lost baggage. *Id*.

Plaintiff stated that she could drive a car, but with difficulty and with help from her daughter. Tr. 47. Her days had no set routine, and she relied on her daughters for help and for doing household chores. Tr. 48–49. To pass the time, she prayed and tried to stay comfortable. Tr. 49. She took medication for her swollen and painful ankles and knees. She declined counseling or psychological treatment because she did not want anyone to think she was "crazy." Tr. 50. She was currently seeing Dr. Sousa Palermo, and was scheduled to see a psychiatrist at an unknown time. Tr. 51. She testified that she was currently taking medications for blood pressure, diabetes, anxiety, depression, "fluid" and "acid." *Id*. The medications sometimes gave her "a little nausea" or made her lightheaded and sleepy. Tr. 52. She was told that these side effects were not life threatening. *Id*.

She further testified to needing a cane for the past year for walking, and that her daughter would massage her legs to help them. *Id*. She can walk from her bed to the bathroom, but after she walks she has to "prop them up." She can stand for five to ten minutes, but testified that it makes her heart beat too fast and her legs hurt, and she has to lie

down and rest. Tr. 53. She can sit on the sofa for fifteen to twenty minutes, but has to rest one leg on the sofa. She can reach overhead with either arm if she is not standing. She reported having difficulty gripping or manipulating things, and carrying things would upset her balance. Tr. 54. She could carry a gallon of milk from the refrigerator to the sink, but anything more and she would "have to pay for it." Tr. 57. As to any difficulty with thinking, memory, or concentration, she stated that she tried "not to take on too much stuff because then it confuses me," and she relied on her daughter. Tr. 54. She would get "paranoid" and "scared" around some people because they frightened her. She cannot be around smoke or dust due to allergies. Plaintiff testified that her only source of income is child support. Tr. 55. When asked by the ALJ what kept her from working between July 2005 and the present, she stated, "My pain." *Id.*

In answer to questions from her attorney, plaintiff testified that she experienced daily swelling and pain in her feet, ankles, hands, and knees. *Id.* She testified to having flashbacks from a prior episode of rape and to "hearing voices." Tr. 56–57. She also testified to experiencing stress and problems with her church when it "split" after the pastor died. Tr. 57.

Plaintiff's twenty-one year-old daughter testified that she would stay with her mother during the day and usually leave after her mother was in bed. Tr. 58. The daughter stated that her mother was unable to do many things she could in the past, and that she would get confused over her medications. The daughter cooked, cleaned, bought groceries, and did

laundry as needed. She also watched over plaintiff's grandson who stayed with plaintiff after school. Tr. 59. If plaintiff left the house, it was for a quick trip with one of the daughters. The daughter sometimes had to help plaintiff with walking. Tr. 60.

The vocational expert witness ("VE") testified that plaintiff's prior work as a housing counselor and senior account representative were sedentary skilled work. Tr. 62. The ALJ posed a hypothetical question to the VE as to whether work existed in the national economy for a person of plaintiff's age, education, and vocational background, with an assumption that the person was limited to light work, with only occasional climbing, balancing, stooping, kneeling, couching, or crawling, and who was precluded from performing work at unprotected heights or in the presence of hazardous machinery or equipment. *Id.* The ALJ asked whether such a person could perform any of plaintiff's past relevant work in the national and local economies. The VE responded that the person could still perform both of plaintiff's past jobs. Tr. 63.

In posing a second hypothetical, the ALJ asked the VE to assume the person was limited to sedentary work, with standing and walking limited to two hours out of an eight hour work day, with the same prior limitations. The VE responded that the person could still perform plaintiff's prior jobs, as they were sedentary jobs. *Id.* The person could not, however, perform such jobs with an additional limitation of being unable to commit or attend to a task for one to two hours. Tr. 64.

12

In terminating the hearing, the ALJ noted that the testimony indicated there may be a psychological problem more substantial than what was suggested from the records. Tr. 65. He referred plaintiff for a psychological or psychiatric consultative examination with a mental status evaluation and completion of the mental RFC form. *Id.* The ALJ stated that plaintiff's counsel would be provided a copy of the completed report with an opportunity for any comments. Tr. 66.

### D.   Supplemental ALJ Hearing of June 2, 2008

At the supplemental hearing held June 2, 2008, plaintiff testified that she had been kept overnight in a hospital after the first ALJ hearing because her "heart kept acting up." Tr. 77. She was currently under the care of a physician at the Acres Home Clinic, but was unsure of the doctor's name or her appointment schedules. *Id.* She testified that she was receiving counseling from her church. Tr. 78. She was taking medications for her diabetes and arthritis, and something to help with the flashbacks and voices. The medications made her stomach hurt, but she had a pill to help with it. *Id.* She was ambulating with a walker at the time of the hearing, and stated that standing and walking was painful. Tr. 79. She further stated that using her hands caused pain and swelling, and that her ability to carry things varied from day to day due to pain.

Plaintiff testified to having difficulties with thinking, memory, and concentration, in that she sometimes had difficulty remembering names and words. Tr. 80. Buses scared her, and smoke made her ill. *Id.* She stated that she could not work because she could barely get

around the house and would not be able to get up and go to work everyday. Tr. 81. She

takes her medicine and stays home. Tr. 84. Her daughters do her housework and keep her

company. *Id.* She testified that her ability to think and process information had worsened.

Tr. 85.

The VE testified that she reviewed the evidence of record and noted that, in addition

to her GED, plaintiff had one year of college. Tr. 87. The VE identified plaintiff's past work

as a housing counselor and account representative supervisor as being sedentary work with

a skill level of five. Tr. 87–88. The ALJ posed a hypothetical question to the VE, asking her

whether work existed in the national economy for a person of plaintiff's age, education, and

RFC. Tr. 88. Specifically, the ALJ asked the VE to assume that the individual could

perform light work, with occasional climbing, balancing, stooping, kneeling, crouching, or

crawling, but no working at unprotected heights or in the presence of hazardous machinery

and equipment. He also stated that the individual would be precluded from detailed or

complex work or work requiring sustained concentration and attention and persistence and

pace for prolonged periods. *Id.* The VE responded that such a person would not be able to

perform any of plaintiff's past relevant work. *Id.* When asked whether there was work in

the national or local economies that could be performed by someone of plaintiff's age,

education, and vocational background and with the hypothetical limitations, the VE stated

that the person could perform light, unskilled work such as mail clerks, with 1400 jobs

existing in the region and over 250,000 nationally, or photo copy machine operator, with

approximately 700 jobs existing in the region and over 150,000 nationally, or office helper, with 1,000 jobs in the region and over 200,000 nationally. Tr. 88–89.

For purposes of the second hypothetical question, the VE was asked to assume that the person was limited to sedentary work, with an ability to stand and walk only a cumulative two out of eight hours, with occasional climbing, balancing, stooping, kneeling, crouching, or crawling, and no work at unprotected heights or around hazardous machinery and equipment. Tr. 89. He further stated that the person was precluded from detailed or complex work or work requiring sustained concentration, attention, persistence, and pace for prolonged periods. When asked whether there was work in the national or local economies that could be performed by someone of plaintiff's age, education, and vocational background and with the given limitations, the VE responded that sedentary unskilled jobs existed. The VE specifically identified the occupation of optical goods workers, which is sedentary, unskilled work at level two, for which there were 600 jobs in the region and over 150,000 nationally, and jewelry workers, with 600 jobs regionally and 130,000 nationally, and order clerks, for which there are 1100 jobs regionally and over 200,000 nationally. Tr. 89–90.

The ALJ also asked the VE whether, assuming plaintiff's testimony regarding her pain and physical and mental limitations were true and credible, whether there would be work in the national or local economies that could be performed by an individual of plaintiff's age, education and vocational background, and limitations; the VE responded that there was not. Tr. 90. The VE testified that an individual presenting with those limitations would not be

15

able to obtain or maintain employment. Tr. 91. Under cross examination by plaintiff's counsel, the VE stated that she would not consider placing an individual with a verbal IQ of 72, performance IQ of 68, and full scale IQ of 67 in an occupation that involved complex or detailed tasks. Tr. 92.

In closing, plaintiff's counsel argued that Dr. Lazar's conclusion that plaintiff could remember and carry out complex instructions, given plaintiff's test results, was not credible. The ALJ expressed concerns with the testing and conclusions, and referred plaintiff to a different consulting expert for a consultative psychological examination. The ALJ stated that he would send counsel a copy of the completed report and give him time for comments or rebuttal, at which time he would close the record and prepare a written decision. He further stated that the written decision would be based on the two hearings and documents in the file. Tr. 93.

As noted earlier, counsel received a copy of the second psychological report on August 20, 2008. Tr. 274–75. In his letter to counsel, the ALJ advised counsel that he could request a supplemental hearing to obtain testimony from the psychologist, and stated that, "If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision." Tr. 274. Counsel responded on September 4, 2008, submitting a letter to the ALJ with comments that the psychologist's report fully supported a favorable decision. Counsel also requested a supplemental hearing if a favorable decision could not be reached. Tr. 272–73. On December 2, 2008, the ALJ issued his

decision finding plaintiff not disabled, without holding a second supplemental hearing.  Tr.

23–35.  On July 14, 2009, the Appeals Council granted plaintiff's request for a review of the

ALJ's decision, and issued its own partially favorable decision on August 21, 2009.

### E.    The Appeals Council Evaluation and Findings

In its partially favorable decision, the Appeals Council stated as follows:

> The claimant asks the Appeals Council to review the Administrative Law
> Judge's decision dated December 2, 2008.  The Administrative Law Judge
> found that the claimant could perform light work existing in significant
> numbers in the national economy and was, therefore, not disabled.  On July 14,
> 2009, the Appeals Council notified the claimant and the representative that it
> had granted the request for review.  In that notice, the Council proposed to
> issue a decision finding the claimant disabled as of September 11, 2008.  The
> Council also notified the claimant and the representative that it would consider
> any comments or new and material evidence that the claimant or the
> representative submitted within 30 days from the date of the notice.
> Comments have been received and considered.

> The Appeals Council has entered into the record the Council's notice of
> proposed action and arguments which are listed in the Supplemental List of
> Exhibits attached to this decision.

> The Appeals Council adopts the Administrative Law Judge's statements
> regarding the pertinent provisions of the Social Security Act, Social Security
> Administration Regulations, Social Security Rulings and Acquiescence
> Rulings, the issues in this case, and the evidentiary facts, as applicable.

> The Appeals Council does not adopt the Administrative Law Judge's findings
> or conclusions regarding whether the claimant is disabled for the period
> beginning September 11, 2008.

> The regulations provide for a sequential evaluation process in determining
> whether a claimant is disabled (20 CFR 404.1520 and 416.920).  In this regard,
> the Appeals Council agrees with the Administrative Law Judge's findings that
> the claimant has not engaged in substantial gainful activity since her alleged

onset date and that she has severe impairments that do not meet or medically equal those listed in 20 CFR Part 404, Subpart P, Appendix 1. However, the Council does not agree with the decision's finding that the claimant is able to perform a reduced range of light work activity (Finding 5).

Medical records document a history of morbid obesity with pain in the lower extremities. X-rays show osteoarthritis of the left foot and left knee. The Council finds, therefore, that the claimant would be unable to stand and/or walk 6 hours of an 8-hour workday and limits her to sedentary work activity. The Council is in agreement with the decision's finding that the claimant is limited to simple work based on her mental problems.

The Appeals Council considered the claimant's statements concerning the subjective complaints. The claimant has a medically determined condition which could reasonably be expected to produce the symptoms alleged for the period beginning September 11, 2008.

At the initial and reconsideration determinations, medical consultants made findings of fact after reviewing the record in this case. These findings have become expert medical opinion which the Appeals Council considered in arriving at this decision. The Council finds that sufficient rationale was not provided with their opinions.

Once a claimant has established that he or she has no past relevant work or cannot perform his or her past relevant work because of his or her impairments, the burden of proof shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which the claimant can perform, given his or her residual functional capacity, age, education, and work experience.

Before September 11, 2008, the claimant was under age 50, which is defined as a younger individual. As of September 11, 2008, the claimant attained age 50, which is defined as closely approaching advanced age. The claimant has a high school education and has past relevant work which is of a skilled or semiskilled nature. The issue of transferability of work skills is not material to this decision in that the claimant has been limited to unskilled work.

For the period beginning September 11, 2008, an individual with the educational and vocational factors described above and who has the residual

18

functional capacity to perform a reduced range of the sedentary exertional level is found to be disabled within the framework of Rule 201.14, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2.

However, prior to September 11, 2008, an individual who has the educational and vocational factors described above and who has the residual functional capacity to perform a reduced range of the sedentary exertional level is found to be not disabled within the framework of Rule 201.21, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2.

In light of the claimant's mental impairments, the Council recommends that a representative payee be established to assist the claimant in the management of her benefits.

Tr. 6 (parenthetical citations omitted).

The Appeals Council then made the following findings:

1.   The claimant met the special earnings requirements of the Act on July 11, 2005, the date the claimant stated she became unable to work and continues to meet them through December 31, 2010. The claimant has not engaged in substantial gainful activity since July 11, 2005.

2.   The claimant has the following severe impairments:   morbid obesity, diabetes mellitus, osteoarthritis of the left knee and left ankle, essential hypertension, depression and borderline intellectual functioning, but does not have an impairment or combination of impairments which is listed in, or is medically equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.   The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities:   lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit 6/8 hours, stand/walk 2/8 hours, and simple, repetitive, unskilled work. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the sedentary exertional level.

4.   The claimant's subjective complaints are credible and supported by the evidence of record.

19

5.     The claimant is unable to perform past relevant work as a housing counselor or account representative supervisor because they exceed the claimant's residual functional capacity according to vocational expert testimony (Administrative Law Judge decision, Finding 6).

6.     Prior to September 11, 2008, the claimant was under age 50, which was considered to be a younger individual. As of September 11, 2008, the claimant is considered to be closely approaching advanced age.

7.     The claimant has a high school education. The claimant's past relevant work is skilled. The issue of transferability of work skills is not material in view of the complainant's residual functional capacity.

8.     Based on the claimant's age, education, and work experience, if the claimant had the capacity to perform the full range of the sedentary exertional level, 20 CFR 404.1569 and 416.969 and Rule 201.21 in Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled before September 11, 2008. Although the claimant's exertional and nonexertional limitations do not allow her to perform the full range of the sedentary exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform. As of September 11, 2008, based on a change in age category, Rule 201.14 provides a framework for a finding that the claimant is disabled (20 CFR 404.1520(f) and 416.920(f)).

9.     The claimant has been disabled as defined in the Social Security Act since September 11, 2008, but not before that date.

Tr. 7–8.

Based on these findings and its review of the record, the Appeals Council made the

following decision:

Based on the application filed on May 18, 2006, it is the decision of the Appeals Council that the claimant is entitled to a period of disability beginning

20

on September 11, 2008, and to disability insurance benefits under sections 216(I) and 223, respectively, of the Social Security Act.

Based on the application filed on May 18, 2006, the claimant became disabled on September 11, 2008, under section 1614(a)(3)(A) of the Social Security Act.

The Social Security Administration must also determine whether the claimant meets the income and resources and other eligibility requirements for supplemental security income payments, and if the claimant is eligible, the amount and the month(s) for which the claimant will receive payment. The claimant will receive a notice from another office of the Social Security Administration when that office makes those determinations. As noted above, the Council recommends that a representative payee be established to assist the claimant in the management of her benefits.

Tr. 8.

### F.    The Issues

Plaintiff raises the following issues in the instant proceeding:

1.    Whether the Appeals Council properly considered the medical evidence.

2.    Whether the Appeals Council properly considered plaintiff's credibility.

3.    Whether the Appeals Council erred in relying on the Medical-Vocational Guidelines.

4.    Whether the ALJ violated plaintiff's due process rights by failing to hold a second supplemental hearing.

Defendant contends that substantial evidence and relevant legal standards support the Commissioner's finding that plaintiff's impairments were not disabling prior to September 11, 2008.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).  A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  If the Commissioner's decision satisfies both of these requirements, it must be affirmed.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

## A.    "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey*, 230 F.3d at 135. It is "something more than a scintilla but less than a preponderance." *Id*. The Commissioner has the responsibility of deciding any conflict in the evidence. *Id*. If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

## B.    Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period

23

of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by medically acceptable clinical and laboratory diagnostic findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990). It must be emphasized that the mere presence of an impairment does not necessarily establish a disability. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).

Substantial gainful activity is defined as "work activity involving significant physical or mental abilities for pay or profit." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009); 42 U.S.C. § 423(d)(3). Further, the impairment must be so severe as to limit the claimant so that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)     a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)     a claimant will not be found to be disabled unless he has a 'severe impairment';

(3)     a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4)     a claimant who is capable of performing work that he has done in the past must be found 'not disabled'; and

(5)     if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

## III.  ANALYSIS

### A.    Evaluation of the Medical Evidence

Plaintiff contends that the Appeals Council afforded the psychological examiners' opinions "great weight," but failed to adopt the actual functional limitations given by those sources.  She argues that the Appeals Council erred in finding that she could perform "simple, repetitive unskilled work," when in fact, she could perform no work given her low IQ test scores found by the first psychologist.  She further complains that the Appeals Council erroneously reduced the psychologists' opinions on her functional limitations to an improper, non-descriptive phrase of "simple work."

The Commissioner has the sole responsibility for evaluating a claimant's RFC based on the record as a whole.  *Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).  The RFC is a combined medical assessment of a claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the complainant's ability to do work.  *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988).  Here, the Appeals Council determined that plaintiff retained the RFC for simple, repetitive, unskilled work at a reduced range of the sedentary exertional level.  Tr. 7, Finding 3.  The Appeals Council expressly stated that it was "in agreement with the [ALJ's] decision's finding that the claimant is limited to simple work based on her mental problems," and referenced the ALJ's finding that, "The restriction to simple work without prolonged concentration, attention, persistence, or pace is sufficient to resolve the limitations she may have in the workplace based on her

mental problems." Tr. 6, 33.  Thus, plaintiff is incorrect in arguing that the Appeals Council limited its finding to the unacceptable phrase, "simple work."

Moreover, the substantial evidence in the record supports an RCF limited to simple, repetitive, unskilled work.  A functional assessment of plaintiff was completed by Dr. Lazar on February 8, 2008, and by Dr. Lonnecker on July 24, 2008.  Both of these psychologists found that plaintiff had moderate restrictions on the ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.  Tr. 395, 414.  They both also found that plaintiff had mild restrictions on the ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions.  *Id.*  Dr. Lazar found that plaintiff had mild restrictions interacting appropriately with the public, supervisors, and co-workers, as well as mild restrictions on responding appropriately to usual work situations and to changes in a routine work setting.  Tr. 396.  Dr. Lonnecker, on the other hand, found that plaintiff had moderate restrictions in interacting appropriately with the public and co-workers, and mild restrictions in interacting appropriately with supervisors.  Tr. 415.  Dr. Lonnecker measured plaintiff's full scale IQ at 74, with a verbal comprehension IQ of 77 and a performance IQ of 74.  Tr. 410.  Dr. Lonnecker and Dr. Lazar concluded that plaintiff's prognosis was fair and each assigned plaintiff a GAF score of 55.  Tr. 391, 412.  Both of the psychologists diagnosed borderline intellectual functioning.  Tr. 392, 412.

Having reviewed the record as a whole, and in light of plaintiff's arguments which reference only the psychological consultants' findings (Docket Entry No. 7, pp. 15–17), the Court is satisfied that there is substantial evidence to support the Commissioner's step four findings, and that he properly considered all evidence before him in making his findings and conclusions and reaching his decision. The psychological evidence as discussed above is consistent with the Commissioner's RFC for plaintiff, and the Commissioner applied the correct legal standards. No error is shown.

### B.    Evaluation of Plaintiff's Credibility

Plaintiff complains that the Appeals Council improperly evaluated her credibility. (Docket Entry No. 7, p. 21.) In its decision, the Appeals Council found that plaintiff "had a medically determined condition which could reasonably be expected to produce the symptoms alleged for the period beginning September 11, 2008." Tr. 6. It separately noted that plaintiff's subjective complaints were "credible and supported by the evidence of record." Tr. 7.

Plaintiff construes these two findings together and argues that the Appeals Council limited its finding of plaintiff's credibility only as to her complaints beginning as of September 11, 2008. In other words, plaintiff argues that the Appeals Council impliedly found that her subjective complaints were *not* credible for the period prior to September 11, 2008.

28

When viewed as a whole, the record provides no support for plaintiff's construction of the Appeals Council's findings. To the contrary, the Appeals Council placed no time limitations in its finding that plaintiff's subjective complaints were "credible and supported by the evidence of record." Its finding that plaintiff "had a medically determined condition which could reasonably be expected to produce the symptoms alleged for the period beginning September 11, 2008," was not an implied finding that plaintiff's subjective complaints regarding complaints made or existing prior to September 11, 2008, were not credible. No error is shown.

Even assuming the Appeals Council had found plaintiff's subjective complaints not credible, a fact finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *See Hollis*, 837 F.2d at 1384. Plaintiff fails to show that a finding against credibility would not have been supported by substantial evidence in the record.

### C.   Reliance on the Medical-Vocational Guidelines

In determining that plaintiff was not disabled prior to September 11, 2008, but that she met the criteria for a finding of disabled when she turned fifty years of age on September 11, 2008, the Appeals Council referenced two Medical-Vocational Guideline Rules: Rule 201.21, for a claimant under age fifty, which is defined as a younger individual, and Rule 201.14, for a claimant who has attained age fifty, which is defined as closely approaching

advanced age. The Appeals Council applied the two Rules to determine plaintiff's disability

status pre-September 11, 2008, and post-September 11, 2008.

The Appeals Council found that an individual under the age of fifty, who had the

education, vocational factors, and RFC of plaintiff to perform a reduced range of the

sedentary exertional level, would not be disabled under Rule 201.21.[2] Tr. 6. Plaintiff claims

that the Appeals Council erred in relying on this Rule at step five of the sequential analysis.

Under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.00(e)(2), when the rules in

Appendix 2 are not fully applicable due to an impairment or combination of impairments

resulting in both strength limitations and nonexertional limitations, the rules in Appendix 2

are considered in determining first whether a finding of disabled may be possible based on the

strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual

strength capabilities, age, education, and work experience provide a framework for

consideration of how much the individual's work capability is further diminished in terms of

any types of jobs that would be contraindicated by the nonexertional limitations. However,

full consideration must be given to all of the relevant facts in the case in accordance with the

definitions and discussions of each factor in the appropriate sections of the regulations, which

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.21. The characteristics associated with this rule are that the claimant (1) is able to perform the full range of sedentary work, (2) has at least a high school education, and (3) has previous work experience that is skilled or semi-skilled but is not transferable. Sedentary work requires the ability to lift up to 10 pounds, to sit for at least six hours, and to stand for up to two hours, out of an eight-hour work day. Social Security Ruling 83-10; 20 C.F.R. § 416.967(a).

provide insight into the adjudicative weight to be accorded each factor.  20 C.F.R. Pt. 404,

Subpt. P, App. 2, Table 1, § 200.00(e)(2).

> The Appeals Council adhered to this procedure, as shown in its relevant finding:

> Based on the claimant's age, education, and work experience, if the claimant had the capacity to perform the full range of the sedentary exertional level, 20 CFR 404.1569 and 416.969 and Rule 201.21 in Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled before September 11, 2008.  Although the claimant's exertional and nonexertional limitations do not allow her to perform the full range of the sedentary exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform.

> As of September 11, 2008, based on a change in age category, Rule 201.14 provides a framework for a finding that the claimant is disabled (20 CFR 404.1520(f) and 416.920(f)).

Tr. 7.

> Additionally, as noted by the Appeals Council in its narrative,

> Before September 11, 2008, the claimant was under age 50, which is defined as a younger individual.  As of September 11, 2008, the claimant attained age 50, which is defined as closely approaching advanced age.  The claimant has a high school education and has past relevant work which is of a skilled or semiskilled nature.  The issue of transferability of work skills is not material to this decision in that the claimant has been limited to unskilled work.

> For the period beginning September 11, 2008, an individual with the educational and vocational factors described above and who has the residual functional capacity to perform a reduced range of the sedentary exertional level is found to be disabled within the framework of Rule 201.14, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2.

> However, prior to September 11, 2008, an individual who has the educational and vocational factors described above and who has the residual functional capacity to perform a reduced range of the sedentary exertional level is found

to be not disabled within the framework of Rule 201.21, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2.

Tr. 6. Here, the Appeals Council considered the medical-vocational guidelines in Appendix 2 as a framework, or a starting point, before considering the specific factors relevant in plaintiff's case, as the Rule allows.

Plaintiff argues that, although the Appeals Council utilized Rule 201.21 as applied to plaintiff's exertional limitations, the Appeals Council failed to take into account plaintiff's nonexertional limitations. A careful review of the Appeals Council's narrative and findings reveals no support for this argument. Plaintiff admits that the ALJ utilized a VE for purposes of the step five analysis. Moreover, the Appeals Council specifically addressed the existence of both exertional and nonexertional limitations in its finding: "Although the claimant's exertional *and nonexertional limitations* do not allow her to perform the full range of the sedentary exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform." Tr. 7 (emphasis added).

To the extent plaintiff contends that the VE's testimony at the supplemental hearing supported a finding that plaintiff was disabled prior to September 11, 2008, based on the first set of IQ testing results, the VE testified that she would not consider placing such an individual in an occupation that involved complex or detailed tasks. Tr. 92. However, the ALJ's relevant hypothetical had expressly precluded the individual from detailed or complex work or work requiring sustained concentration and attention and persistence and pace for

prolonged periods. Tr. 89. Accordingly, the record does not support plaintiff's argument that her nonexertional limitations were not given appropriate consideration by the Appeals Council for purposes of determining her disability status prior to September 11, 2008.

Plaintiff further argues that the Appeals Council improperly applied the Rule in determining plaintiff's status prior to September 11, 2008, in light of its finding that plaintiff's subjective complaints were credible and supported by evidence in the record. Tr. 90–91. Subjective evidence, however, need not take precedence over objective evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988). The Appeals Council found that plaintiff had the severe impairments of morbid obesity, diabetes mellitus, osteoarthritis of the left knee and left ankle, essential hypertension, depression and borderline intellectual functioning. It further found that her combination of impairments resulted in limitations on her ability to perform work-related activities as to lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit 6/8 hours, stand/walk 2/8 hours, and simple, repetitive, unskilled work. It expressly agreed with the ALJ's finding that, "The restriction to simple work without prolonged concentration, attention, persistence, or pace is sufficient to resolve the limitations she may have in the workplace based on her mental problems." Tr. 6, 33. The Appeals Council concluded that, in view of all of her limitations, plaintiff had the residual functional capacity to perform a reduced range of the sedentary exertional level. The Appeals Council found that, although plaintiff's exertional and nonexertional limitations did not allow her to perform the full range of the sedentary exertional level, using Rule 201.12 as a framework for

decisionmaking, there were a significant number of jobs in the national economy which she could perform.

Plaintiff argues that this is directly contradicted by the VE's testimony that plaintiff would not be employable if the ALJ were to find her testimony credible and that she experienced all of the physical and mental limitations to which she testified.  Tr. 90–91. However, The VE did not testify that plaintiff would not be able to obtain or maintain employment with the limitations and framework set forth by the Appeals Council, and no error is shown.

### D.    Second Supplemental Hearing

Plaintiff contends that the ALJ denied her procedural due process in not holding a second supplemental hearing prior to issuing its decision on December 2, 2008.  Plaintiff's argument appears to be two-fold:  one, that she requested a second supplemental hearing but the ALJ issued his opinion without holding the hearing; and two, that procedural due process entitled her to a second supplemental hearing because of the new psychologist's written report.  Plaintiff's arguments are unsupported.

The record shows that, on August 20, 2008, the ALJ sent a copy of Dr. Lonnecker's report to plaintiff's counsel, and informed him that he had the right to:

1.    submit written comments concerning the new report or a written statement as to the applicable facts and law, or submit any additional records he wished the ALJ to consider;

2.    submit written questions to be sent to the psychologist;

3.    request a supplemental hearing; "If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision." In addition, counsel may request an opportunity to question witnesses, including the psychologist; "I will grant the request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues";

4.    request issuance of a subpoena to require attendance of witnesses or submission of records, which must be requested in writing no later than five days prior to any supplemental hearing date; "I will issue a subpoena if reasonably necessary for the full presentation of the case."

Tr. 274. On September 4, 2008, plaintiff's counsel responded to the ALJ's letter, thanking him for the opportunity to comment on Lonnecker's report. Tr. 272. Counsel provided the ALJ a lengthy analysis of the report, and noted that it "supports fully a favorable decision in her claim for disability." *Id.* In ending his letter to the ALJ, counsel stated,

> As stated above, the proffered exhibit supports a finding of disability. *If you feel that the new evidence does not support a finding of disability, the claimant requests a supplemental hearing for the opportunity to cross-examine Dr. Lonnecker.*

Tr. 273 (emphasis added).

As is clear from these letters, the ALJ informed counsel that he had the right to request a supplemental hearing, and that the hearing would be granted unless the ALJ received additional records that supported a fully favorable decision. Counsel, however, did not request a supplemental hearing and did not submit additional records for the ALJ's consideration. Rather, he *conditionally* requested a supplemental hearing in the event that the ALJ felt that Lonnecker's report did not support a finding of disability. This was not a

35

procedural right afforded plaintiff under either the ALJ's letter or applicable law. The ALJ's letter did not state that, if the ALJ felt Lonnecker's report did not support a finding of disability, plaintiff would be granted a supplemental hearing. Plaintiff had the right to request a supplemental hearing and submit additional records; if the additional records supported a fully favorable finding of disability, no hearing would be held. Plaintiff was not entitled to a preliminary or proposed ruling from the ALJ regarding Lonnecker's report in lieu of affirmatively requesting a supplemental hearing. The record does not support plaintiff's argument that the ALJ ignored her purported request for a second supplemental hearing.[3]

Plaintiff additionally argues that procedural due process entitled her to a second supplemental hearing due to Lonnecker's new written report. Citing *Tanner v. Sec'y of HHS*, 932 F.2d 1110 (5th Cir. 1991), plaintiff posits that a claimant has a procedural due process right to cross examine the author of a post-hearing report. In *Tanner*, the Fifth Circuit held that the ALJ denied the claimant due process by relying on a written report submitted after the close of her administrative hearing, without first providing her an opportunity to cross examine the report's author. Although plaintiff attempts here to argue that *Tanner* involved

---

[3]Plaintiff's inversion of the ALJ's letter is further shown by her argument in her motion that the ALJ advised her of her right to request a supplemental hearing, "which the ALJ assured would be granted if a fully favorable decision could not be reached at that time." (Docket Entry No. 7, p. 25.) The ALJ gave plaintiff no such assurance. To the contrary, the ALJ stated in the letter that a request for a supplemental hearing would be granted *unless* he received additional records that fully supported a favorable decision. Because the ALJ's letter was enclosing Lonnecker's report, "additional records" would not include the Lonnecker report itself. Plaintiff was not entitled to request a supplemental hearing conditioned upon the ALJ's determination that Lonnecker's report would not support a finding of disability.

a due process right to a supplemental hearing following receipt of a post-hearing written report, *Tanner* was decided on grounds of a procedural due process right to cross examine the author of a post-hearing written report, whether by hearing, written questions, or otherwise. Moreover, the additional cases cited by plaintiff all turn on this same failure to provide the claimant an opportunity to cross examine the author of a written report.

In the instant case, it is beyond dispute that the ALJ informed plaintiff, in writing, of her right to submit written questions to Lonnecker, or to request a supplemental hearing with a requested subpoena for specific witnesses or records. Plaintiff elected to inform the ALJ in writing of her opinion that Lonnecker's report required a favorable decision but, if the ALJ disagreed, she was requesting a supplemental hearing. As already noted by the Court, plaintiff did not submit written questions to be sent to Lonnecker, or affirmatively request a supplemental hearing with a subpoena for Lonnecker's presence or to orally question Lonnecker. *Tanner* does not require a reversal and remand of this case.

Even assuming the ALJ violated plaintiff's due process rights, plaintiff must still demonstrate resulting substantial prejudice. *See Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. 1981) (holding that a petitioner must show substantial prejudice in order to prove denial of due process in an administrative proceeding). Here, plaintiff alleges no resulting substantial prejudice from the alleged due process violation; at most, she states only that due process required a supplemental hearing for her to rebut the Commissioner's interpretation of Lonnecker's report. (Docket Entry No. 7, p. 27.) In referencing only the loss of an

opportunity to dispute the ALJ's interpretation of the evidence, plaintiff establishes no substantial prejudice, and no error is shown.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment (Docket Entry No. 9), **DENIES** Plaintiff's motion for summary judgment (Docket Entry No. 6), and **AFFIRMS** the August 21, 2009, decision of the Commissioner as issued by the Appeals Council.

Signed at Houston, Texas, on this the 20th day of July, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

38